Walton, &c., v. Riley, &c.

CASE 56—PETITION EQUITY—MARCH 24.

# Walton, &c., v. Riley, &c.

### APPEAL FROM TODD CIRCUIT COURT.

| 85 | 413 |
| 88 | 229 |

| 85 | 413 |
| f122 | 211 |

| 85 | 413 |
| 125 | 649 |

1. CORPORATIONS CREATED UNDER CHAPTER 56 OF THE GENERAL STAT-
   UTES may commence business as soon as the articles are *filed for rec-
   ord* in the office of the county court clerk, and the franchise can not
   thereafter be declared null and forfeited except in a regular proceed-
   ing instituted for that purpose.  It is not, therefore, essential to the
   validity of the acts of such a corporation that the newspaper publica-
   tion required by the statute should have been made, or that the arti-
   cles of incorporation should have been filed with the Secretary of
   State.  These defects can be taken advantage of only in a direct pro-
   ceeding to annul the franchise.

   In this case the collection of a tax levied in aid of a turnpike is
   resisted upon the ground that the turnpike company, the business of
   which was merely to *construct* the road, did not file a copy of the
   articles of incorporation with the Secretary of State within three
   months after the filing in the clerk's office, as required by chapter 56
   of the General Statutes, under which the corporation was attempted
   to be organized.  *Held*—That the collection of the tax cannot be
   resisted upon this ground.

   The case of Heinig, &c., v. Adams & Westlake Manufacturing
   Company, 81 Ky., 300, is overruled.

2. SAME.—As the clerk certified that the articles of incorporation were
   lodged for record and duly recorded, the presumption must be indulged
   that they were recorded in the proper record book.  But even if they
   were recorded in a *deed* book, the acts of the corporation were not
   thereby rendered invalid.

3. TAXATION.— When an act of the Legislature provides for the submis-
   sion to the voters of a county or magisterial district of the question
   whether or not a tax shall be levied in aid of the construction of a
   turnpike, the question may be submitted at a *special* election.

4. SAME.—It is no objection to the validity of a tax that some inequality
   of burden may arise from its imposition, as perfect equality of taxa-
   tion is unattainable.

5. SAME.—The act authorizing the tax in this case provided that the
   county judge should "immediately" levy the tax upon the district
   after the election, provided the vote should be in favor of the tax.
   The election was held in March, 1883, and the tax was not levied
   until the December following.  *Held*—That the delay was not un-
   reasonable, and that the levy was valid.

6. SAME.—The act provided that the clerk of the county court should make out and deliver to the sheriff a list of the taxable property of said district as shown by the returns of the assessor of the county "for the last annual assessment." *Held*—That this does not mean the assessment for the preceding year, but the last assessment then *on file*, which may be the assessment for the current year, as it was in this case.

BROWDER & EDWARDS FOR APPELLANTS.

1. The *existence* of a corporation organized under chapter 56 of the General Statutes depends upon a literal and exact compliance with the provisions of the statute. (Bamberger, Bloom & Co. v. White *et. al.*, 5 Ky. Law Rep., 292; Heinig, &c., v. The Adams & Westlake Co., 81 Ky., 300; People v. Kingston T. R. Co., 23 Wend., 193; S. C., 35 Am. Dec., 551.)

   In this case there was a failure to record the articles in the county court *in a book kept for that purpose*, as required by the statute, a failure to make the required newspaper publication *within three months*, and a failure to file a copy of the articles in the office of the Secretary of State *within three months* as required.

2. The county court had no power to submit the question of taxation until after the incorporation of the turnpike company. (Goff v. Winchester College, 6 Bush, 447; Allison v. L. H. & C. W. R. R. Co., 9 Bush, 248.)

3. The vote should have been taken at a *general* election. Section 36 of article 2 of the Kentucky Constitution embraces debts contracted by subordinate civil divisions of the State as well as State debts. (People v. Mayor of Chicago, 51 Ill., 17; S. C., 2 Am. Rep., 298; Cooley's Const. Limit., 273.) The cases of Slack v. M. & L. R. R. Co., 13 B. Mon., 1, and Shelby County Court v. C. & O. R. R. Co., 8 Bush, 209, commented on.

4. The mode of assessment prescribed by the Legislature, and followed by the county court, results in gross inequality. Although persons living in the district and owning property elsewhere in the county have listed it in the district, and persons owning property in the district and living elsewhere have listed it where they are domiciled, the Legislature has restricted the county court to the assessor's report as the exclusive source from which to derive information as to what taxable property was in the district.

5. The last annual assessor's report was that of 1882, upon which the court should have based its levy.

BEN. T. PERKINS, JR., AND W. L. REEVES FOR APPELLEE.

1. It is not essential to the existence of a corporation organized under chapter 56 of the General Statutes, that the newspaper publication

Walton, &c., v. Riley, &c.

required by the sixth section of that chapter should be made *within three months* from the filing of the articles of incorporation. The publication *within that time* is essential only to the validity of the acts of the corporation done prior to the publication.

2. It was not essential to the validity of the acts of the corporation that the articles of incorporation should be *recorded*. The statute expressly provides that the corporation may commence business as soon as the articles are *filed for record* in the office of the county court clerk, and their acts shall be valid if the publication in a newspaper is made within three months from that time.

But, even if it was essential that they should be recorded *in a book kept for that purpose*, the clerk certifies that they were duly recorded, and the presumption must be indulged that he did his duty, and recorded them in the proper book.

3. The filing of a copy of the articles of incorporation in the office of the Secretary of State was not necessary. That is required only of those companies which are " required to pay a tax or money to the Commonwealth," and not of a mere construction company which does not and can not charge tolls, and does not want the additional powers given by chapter 110 of the General Statutes.

But even if the filing of a copy in the office of the Secretary of State was necessary, it was not necessary that it should be filed *within three months* in order to give validity to *subsequent* acts of the corporation.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The order of the judge of the Todd county court, submitting to the voters of magisterial district No. 6 of the county the question whether a tax of eight thousand dollars and the cost of its collection should be levied upon the property of the district, to aid in the building of the Elkton Turnpike by the Elkton Turnpike Company, was entered on February 12, 1883. It was authorized by legislative enactment, and the requisite preliminary steps had been taken.

The election was held on March 10, 1883, resulting in a majority of sixty-nine votes for the proposition. The entire vote cast appears to have been a full one for the precinct, judging from its population. The

vote was properly ascertained and certified, but no
further proceedings in the matter were had until De-
cember 10, 1883, when the county judge entered an
order levying the tax and appointing as collector the
appellee, J. W. Riley.

The appellants then brought this suit to enjoin its
collection. The grounds relied upon to sustain it are
quite numerous; but we shall consider those only
which are mainly urged in argument, because they
appear to us to be *the* questions in the case.

Section 36, article 2, of our State Constitution, pro-
vides that no act of the Legislature authorizing the
creation of any debt on behalf of the Commonwealth
shall become effective until it has been submitted to
the people at a *general* election, and shall have re-
ceived a majority of all the votes then cast; provided,
however, that the General Assembly may borrow money
to pay any part of the debt of the State without such
submission. It is true that former distinguished judges
of this court have differed as to whether this provision
includes debts created by a county or other municipal
division of the State; but to our minds, the construc-
tion which for years has been placed upon it by both
the legislative and executive branches of the govern-
ment must control. For a long period of time it has
been the legislative practice to sanction the creation
of such indebtedness, when approved by the local vote
at *special* elections.

The Elkton Turnpike Company was organized as a
corporation under the provisions of chapter 56 of the
General Statutes. It provides:

"Section 3. Before commencing any business except

that of their own organization, they (the corporators) must adopt articles of incorporation which shall be signed and acknowledged by them as deeds are required to be acknowledged, and recorded in a book kept for that purpose in the office of the clerk of the county court of the county where the principal place of business is to be.

"Section 4. Corporations for.the construction of any work of internal improvement shall, in addition, file a certified copy of such articles in the office of the Secretary of State, and have the same recorded by him in a book kept for that purpose. * * *

"Section 6. The corporation may commence business as soon as the articles are filed for record in the office of the county court clerk, and their acts shall be valid if the publication in a newspaper is made, and the copy filed in the office of the Secretary of State, when such filing is necessary, within three months from such filing in the clerk's office." * * *

The appellants resist the collection of the tax upon the ground, mainly, that the turnpike company, the business of which is not to operate, but merely to construct the road, was never *in esse* as a corporation, or legally organized; that it had no corporate existence; that it had not performed the conditions required of it under the statute, in order that the franchise may vest, and, therefore, the subscription is void.

The newspaper publication or notice required by the statute was properly given. This is not questioned. It is asserted, however, that the county clerk recorded the articles of incorporation in a *deed* book, and not

vol. 85—27.

in "a book kept for that purpose." This, however, does not appear from the record. They were acknowledged and filed for record on February 12, 1883; and the copy of them, which is made a part of this record, shows that the clerk certified that they were lodged for record and duly recorded. The presumption must be indulged that they were recorded in the proper record book.

But, conceding that they were recorded in a deed book, yet this was the act of the clerk. The corporators lodged them for record, and had the right to presume that the clerk would properly perform his duty, and record them as directed by the statute. The requirement as to recording is for the purpose of giving notice, and preserving the articles of incorporation. Moreover, the statute provides that "the corporation may commence business as soon as the articles are filed for record in the office of the county court clerk." This would often be necessary; and this provision of the statute is not in conflict with section 3 *supra*, because when the two are considered together, they should not be construed as requiring that the articles shall be recorded before beginning business, but only that they shall be adopted, signed, acknowledged and filed for record.

The copy of the articles of incorporation were, however, not filed in the office of the Secretary of State within three months from the time when they were filed in the county clerk's office for record, and not until December 10, 1883.

As the order for the election was made on February 12, 1883, and it held on March 10 following; and as

nearly ten months had elapsed from the time of the filing of the articles of incorporation in the clerk's office before the copy was filed in the office of the Secretary of State, it is urged that the imposition of the tax was illegal and void.   This argument is based upon the ground that the corporation was not in being; that its existence was a condition precedent to the exercise of any power looking to a subscription in aid of the road; that the corporators failed to complete the organization begun on February 12, 1883, by not filing the copy in the Secretary's office within three months from that day, and having so failed, they could not do so thereafter.   This involves the construction of a statute somewhat doubtful in meaning, owing to an apparent conflict in some of its provisions.

It is only corporations for the construction of any work of internal improvement that are required to so file a copy of their articles of incorporation; and the sixth section *supra*, therefore, uses the words, "when such filing is necessary."   The Elkton Turnpike Company, however, is a corporation of the class to which this direction applies; and the question therefore arises whether its existence depended upon this being done.

In determining this question the seventeenth and eighteenth sections of the statute should be considered in connection with the sixth.   They are:

"Section 17. Persons acting as a corporation under the provisions of this act shall be presumed to be legally organized until the contrary is shown; and no such franchise shall be declared actually null or forfeited, except in a regular proceeding brought for that purpose.

"Section 18. No person acting as a corporation under the provisions of this act shall be permitted to set up or rely upon the want of a legal organization as a defense to action brought against them as a corporation; nor shall any person who may be sued on a contract made with such corporation, or sued for an injury done to its property, or for a wrong done to its interests, be permitted to rely upon such want of legal organization in his defense."

The statute evidently contemplates the transaction of business by the organization as a corporation as soon as the articles of incorporation are filed in the clerk's office. Indeed, the sixth section expressly gives this power. "*The corporation* may commence business as soon as the articles are filed for record in the office of the county court clerk." By the seventeenth section the legality of its organization is to be presumed, and the franchise cannot be declared null or forfeited except in a regular proceeding instituted for that purpose.

These provisions recognize indisputably the existence of the corporation from the time of the filing of the articles of incorporation in the clerk's office. It is said, however, that the sixth section, by implication, declares its acts void, if the four weeks' notice by newspaper publication, required by the statute, is not given, and the copy of the articles of incorporation filed with the Secretary of State, in cases where such filing is necessary, within three months from the time of filing them in the clerk's office.

The eighteenth section, however, qualifies this, and provides that the persons so acting as a corporation shall not rely upon a want of legal organization as a

defense to an action brought against them as a corpo-
ration, nor shall any one who may be sued on a con-
tract made with "*such corporation*," or for an injury
done to its property, or for a wrong done to its interest,
rely upon such a defense. The Legislature apparently
intended, even if they did not do so, to provide by this
section for every state of case which could arise ; and
to give it effect, we must restrict the operation of the
sixth section *supra*, so far as it by implication declares
the acts of the corporation invalid, to cases where it is
sought to annul the franchise, as authorized by the
seventeenth section of the statute.

This construction is necessary to give effect to the
entire law, and it appears to be in harmony with the
legislative intent when the act is considered as a whole.
Unless so construed, its provisions are irreconcilable.
We are aware that these views are in conflict with the
case of Heinig, &c., v. The Adams and Westlake Manu-
facturing Company, 81 Kentucky Reports, 300, where
it was held that an organization under chapter 56 of the
General Statutes could have no existence as a corpora-
tion, unless it appeared that the notice by publication
had been given, and a copy of the articles of incorpora-
tion filed in the office of the Secretary of State, when
such filing is necessary, within three months from the
time of filing in the county clerk's office ; and that
these matters were conditions precedent to the validity
of any acts by it as a corporation. It was a case where
it did not appear that the notice by publication had
been given ; and it was there said : "Such corporations
have no right to commence business, or do any corpo-
rate act, until the articles of incorporation are filed in

the proper office for record, and the notice specified by section 5, *supra*, is published for the length of time, and within the time named in sections 5 and 6."

The latter part of this statement is directly in the face of the statute. Moreover; the court, in determining the case, does not appear to have considered sections 17 and 18 *supra*, and not being in accord with the views above expressed, it is overruled.

It results that the objection to the collection of the tax, upon the ground that the corporation was not in being, can not be sustained.

Some inequality of burden may arise from its imposition, but perfect equality of taxation is unattainable. It can only be approximated.

The third section of the act of April 26, 1880, amendatory of "An act to provide for the building of turnpike roads in Todd county, Kentucky, and to authorize the different magisterial districts or election precincts to vote a tax for that purpose," provides that the county judge shall "*immediately*" levy the tax upon the district after the election, provided a majority of the votes cast are favorable thereto; and that "the clerk of said county court shall, as soon as practicable, make out and deliver to the sheriff of Todd county a list of the taxable property and tithes of said district, as shown by the returns of the assessor of the county for the *last annual assessment*." (Acts of 1879, volume 2, page 686.)

The tax was not levied until December 10, 1883, although the election was in March preceding; and it is, therefore, urged that the power of the county judge to make the levy had lapsed. The list was made from

the assessor's returns of 1883; and it is also insisted that it should have been taken from those of 1882. In our opinion, however, an unreasonable time had not elapsed after the election before the levy was made; and the list is then to be made "as soon as practicable." The act does not provide that it shall be taken from the assessment of the preceding year, but from the last annual assessment. This means the last one then on file. When the list in this instance was made, the time had expired within which the assessor must return his assessment. The last "annual assessment" then on file was that of 1883, and it was proper to make the list from it.

Judgment affirmed.