## A. N. McLENNAN *et al.* v. MINNIE HOPKINS.

### No. 4.

1. CORPORATION — *not Even de Facto.* An association of persons cannot have even a *de facto* corporate existence under a general law which provides for the formation of corporations unless there has been such a *bona fide* attempt to comply with the requirements of the law as resulted in giving at least a color of legal authority to act in a corporate capacity.

2. ——— *Failure to Execute or to File Articles of Incorporation.* An entire failure to execute or to file articles of incorporation, as required by the statute before persons can associate and do business as a corporation, precludes any claim to a *de facto* corporate existence.

3. ——— *Members Liable as Partners.* Where certain persons subscribe for stock and organize for the transaction of a banking business by the election of a board of directors, a president, and cashier, intending to incorporate as a bank under the general laws of this state, and thereafter pay in a part of the capital subscribed, and a regular banking business is conducted by such persons through their officers in the belief that they are incorporated, but there has been in fact no such compliance with the law concerning corporations as to make such organization even a *de facto*

corporation, those interested in the bank as organizers and owners of its capital and business are liable as partners for the debts contracted by the officers of such bank in the due course of its business.

MEMORANDUM.—Error from Russell district court; W. G. EASTLAND, judge.   Action brought by Minnie Hopkins against A. N. McLennan, W. Z. Smith, W. F. Tompkins, Seymour Hutchinson and others for the recovery of money deposited in the Bank of Dorrance. Judgment for plaintiff.   Defendants bring the case to this court.   Affirmed.   The facts are stated in the opinion, filed October 9, 1895.

*Ira E. Lloyd*, for plaintiffs in error.
*Sutton & Dollison*, for defendant in error.

The opinion of the court was delivered by

GARVER, J. :  Minnie Hopkins, as assignee of Smith & Hopkins, brought this action against the plaintiffs in error to recover the sum of $761.54, alleged to be due on account of a deposit of money made by Smith & Hopkins in the Bank of Dorrance, which was owned and controlled by plaintiffs in error, and for which deposit, it is claimed, they were liable as partners. The defendants answered the petition by a verified answer consisting of a general denial, and the further allegation that "all of the dealings and transactions stated in said plaintiff's petition were had, if at all, with the Bank of Dorrance, the same being a duly organized and existing corporation under the laws of Kansas."   No reply was filed to this answer, but a trial was had the same as if issue had been formally joined upon all material facts in dispute, and judgment was rendered against the defendants, now plaintiffs in error, holding them individually liable as partners for the full amount of the claim.

The record shows that about April, 1886, A. N. McLennan and his codefendants, with others, agreed to establish a bank for the transaction of a banking business at Dorrance, Kan., with a capital of $50,000, divided into shares of $100 each. Pursuant to such agreement, the several parties interested signed a paper, each agreeing to take certain shares of stock. Certain ones of their number were chosen to act as directors, and W. Z. Smith was elected president and L. B. Hail cashier. The full amount of the capital stock was subscribed and two assessments of 10 per cent. each paid in by the subscribers shortly after the subscriptions were made, and thereafter a dividend of the profits of the business was made of from 2 to 5 per cent., which was applied by the bank as a further payment on the stock. A seal was provided and used, and a regular banking business of discount and deposit was carried on under the name of the Bank of Dorrance until December, 1889.

About the time of the organization of the bank, under the direction of the president, articles of incorporation of some kind were drawn up, the record not disclosing what such articles contained; neither does it show by whom they were signed, though the evidence tends to show that they were signed by some of the directors, and thereafter delivered by the president of the bank to the cashier. No articles of incorporation, or statement of any kind concerning the organization of said bank, were filed or recorded in the office of the register of deeds of Russell county, where said bank was located, nor any copy or other instrument filed in the office of the secretary of state. With the exception of the president, none of the stockholders seems to have given any attention to the incorporation of the bank, but to have allowed the business

to be carried on believing that it was duly incorporated, and not intending at any time to assume any liabilities other than such as might attach to them as stockholders in a corporation organized under the laws of Kansas. Smith & Hopkins in their dealings with the bank regarded it as a corporation, and knew nothing to the contrary until about the time of the failure of the bank in 1889, and after the deposits, sought to be recovered, were made.

The main question to be decided in this case is, whether one having a claim as a depositor in this bank for the recovery of an unpaid deposit can hold the several persons who own the bank individually liable as partners, or whether, having dealt with the bank as a corporation, he is estopped from claiming any other than a corporate liability. It is contended for plaintiffs in error that the bank was at least a *de facto* corporation, and that one dealing with it as such cannot, in this collateral way, attack the validity or regularity of its incorporation.

On the trial of the case an objection was made by the defendants to the introduction of any evidence by the plaintiff, on the ground that "upon the pleadings filed there were no issues formed to be tried, and that the plaintiff was entitled to recover nothing herein." It is argued that this objection was well taken, for the reason that the answer alleged that the dealings, alleged to have been had by plaintiff's assignors with the Bank of Dorrance, were with such bank as a duly organized and existing corporation under the laws of the state of Kansas. We cannot agree with counsel in this view of the pleadings. By the denial under oath of the allegations of the petition, the plaintiff was put upon proof of the alleged fact that defendants were doing business as partners, and thus was

joined the principal issue upon which the liability of the defendants was to be determined. This issue was not changed or broadened by the averment of the answer that the Bank of Dorrance was a corporation. In this respect, the whole answer taken together amounted to nothing more than a general denial. If plaintiff failed to show that the defendants sustained such a relation to the business of the Bank of Dorrance as in law would make them liable as partners, it was quite unimportant whether such failure was because the bank was a corporation or for other sufficient reason. When an answer, though containing special denials or affirmative allegations of facts inconsistent with the petition, amounts to no more than a general denial, no reply is necessary. (*City of Burrton v. Savings Bank*, 28 Kan. 390.)

Were the defendants liable as partners? It must be conceded that they were jointly interested in the business carried on in the name of the Bank of Dorrance, and jointly concerned, though perhaps in different degrees, in the profits and losses of that institution. The business for the conduct of which the bank was organized was such as could very properly and legally be carried on by one or more persons without regard to laws for the incorporation of such enterprises. Incorporated banks do not have, either in law or in fact, an exclusive right to engage in the business of receiving deposits, loaning funds, selling exchange, and the like, such as was conducted by the Bank of Dorrance. Being thus jointly engaged in such business, there is no presumption of individual non-liability. Persons engaged in business as a corporation, whether their charter rights and privileges are conferred by a special or general law, are relieved from individual liability for the acts of the association

with which they are connected; the law pertaining to incorporated bodies clothes the individual with an immunity from liabilities which otherwise would fall upon him. Hence it follows that, to enable one to avoid such individual liability for a transaction with which he is connected on the ground that it was the act of a corporation in which he was only a stockholder, it must appear that such steps have been taken to incorporate as will give those concerned in it at least a legal semblance of corporate existence. When the question arises collaterally, as it does in this case, it is not necessary that the various steps prescribed by law should have been fully and regularly taken, or that the corporation should exist *de jure;* it is sufficient that enough has been done to make it a corporation *de facto.* To this extent we agree with counsel for plaintiffs in error.

The question still remains, Was the Bank of Dorrance a corporation *de facto?* We think not. It is difficult and perhaps unnecessary to attempt to reconcile the many decisions bearing on this question. Between some of them there is an irreconcilable conflict, so that, when we come to determine what is a *de facto* corporation, we are met by a diversity of authority. The rule recognized by the supreme court of this state is thus stated by Mr. Justice BREWER in *Pape v. Capitol Bank,* 20 Kan. 440 :

" When parties have associated themselves together for the purpose of organizing a corporation under a general law, and have proceeded in good faith to take all the steps supposed necessary to complete such incorporation, and on the faith thereof engage in business as a corporation for a series of years, a party who has repeatedly dealt with them as such corporation will not, when sued on a note and mortgage held by it, be permitted to show, as a defense to the action,

that there was some mere technical omission in the steps prescribed for incorporation. The corporation is one *de facto*, and only the state can then inquire, and that in a direct proceeding, whether it be one *de jure*. . . . There must in .such cases be a law under which the incorporation can be had. There must also be an attempt in good faith on the part of the incorporators to incorporate under such law. And when, after this, there has been for a series of years an actual, open and notorious exercise, unchallenged by the state, of the powers of a corporation, one who is sued on a note held by such corporation will not be permitted to question the validity of the incorporation as a defense to the action. No mere matters of technical omission in the incorporation, no acts of forfeiture from misuser after the incorporation, are subjects of inquiry in such an action."

The attempt to incorporate referred to in that case must be something more than the mere physical organization or formal arrangement into a working force of the promoters of the enterprise. Something must be done beyond the mere transaction of business in the manner and form usually adopted by corporations. There must also be something more tangible and effective than a mere mental operation in the direction of what is intended. The steps taken and the attempt made must, to some extent and in some degree, have resulted in the effecting of those things which the law designates as prerequisite to a corporate existence, however informal and irregular such proceedings and results may be.

Had the articles of incorporation been prepared, and recorded or filed, as required by the statute, and had the organization otherwise been effected as shown in this case, no question could be thus raised as to the fact of a corporate existence because of defects and irregularities in the attempted organization or in the

articles of incorporation.    But, an entire failure on
the part of the officers of the bank to prepare and ex-
ecute the certificate, or articles of incorporation, re-
quired by law, and an entire failure to file a certificate
or statement of any kind whatever in the office of the
register of deeds of the county or in the office of the
secretary of state, left the organizers of this bank
without a shadow of legal corporate existence.    There
was no substantial compliance with the law, and
there could be no *de facto* corporation.    We are sup-
ported in this conclusion  by the following  cases :
*Bigelow v. Gregory*, 73  Ill. 197 ;  *Kaiser v. Lawrence
Savings Bank*, 56 Iowa, 104 ;  *Sheble v. Strong*, 128 Pa.
St. 315 ;  *Hill v. Beech*, 12 N. J. Eq. 31 ;  *Stout v. Zulick*,
48 N. J. L. 599 ;  *Abbot v. Omaha Smelting Co.*, 4 Neb.
416 ;  *Society of Perun v. Cleveland*, 43 Ohio St. 481 ;
*Railroad  Co. v. Cary*, 26  N. Y. 77 ;  *Hart v. Salisbury*,
55 Mo. 310 ;  *Granby Mining and Smelting Co. v. Rich-
ards*, 95 id. 106 ;  *Whipple v. Parker*, 29 Mich. 369.

In the cases cited there was a failure on the part
of the organizers of the claimed corporation to do
some act, generally the neglect to file the articles of
association or incorporation made by the statute pre-
requisite to corporate existence, and the rule clearly
and forcibly laid down is that in such cases there is
no *de facto* corporation, and that the claimed corpo-
rate existence may be attacked collaterally.    An ex-
ception to this rule exists in cases where one is sued
by the alleged corporation upon a contract in which
the corporate capacity is recognized.    To this effect
are :  *Jones v. Cincinnati Type Foundry Co.*, 14 Ind. 89 ;
*Meikel v. German  Savings Fund Society*, 16  id. 181 ;
*Fresno Canal and Irrigation Co. v. Warner*, 72 Cal. 379 ;
*Massey v. Building Ass'n*, 22 Kan. 624.    In those cases
another principle is invoked, which does not permit a

party to avoid the obligation of his contracts upon the mere technical objection that the party with whom he contracted had not the legal capacity to enter into the contract of which he has had the benefit. The distinction between that class of cases and the case under consideration is obvious.

It is equally well settled that a substantial, though imperfect and irregular compliance with the law, in a *bona fide* attempt to incorporate, followed by a user of corporate rights, will create a *de facto* corporation, and the corporate existence cannot be collaterally questioned by one dealing with it as a corporation. To this effect are : *Baker v. Neff*, 73 Ind. 68 ; *Williamson v. Building and Loan Ass'n*, 89 id. 389 ; *Rice v. R. I. & A. Rld. Co.*, 21 Ill. 93 ; *B. & A. Rld. Co. v. Cary*, 26 N. Y. 75 ; *Mining Co. v. Woodbury*, 14 Cal. 424 ; *O. & V. Rld. Co. v. Plumas*, 37 id. 361 ; *Swartwout v. M. A. L. Rld. Co.*, 24 Mich. 389.

We think the facts shown by the record justified the trial court in holding the plaintiffs in error liable as partners for the debts of the bank. Other questions are suggested by the record as to the right of the plaintiff below to recover in this case, but, as they are not presented by the pleadings nor in the briefs, we shall not consider them.

The judgment will be affirmed.

All the Judges concurring.