OGDEN PACKING & PROVISION CO. v. WYATT et al.

No. 3694.   Decided February 10, 1922.   (204 Pac. 978.)

1. CORPORATIONS—PARTNERSHIP—PARTNERSHIP OR CORPORATION HAS RIGHT TO ADOPT ANY NAME DESIRED. Whether persons did business under the name "Regent Street Market" or "Regent Street Market Company" was immaterial on issue as to whether party dealing with it thought it was dealing with a corporation or partnership, since either as a partnership or as a corporation

the members had the undoubted right to adopt any name they desired.

2. CORPORATIONS—PARTNERSHIP—MERE EXECUTION OF AN AGREEMENT HELD NOT TO CREATE DE FACTO CORPORATION SO AS TO RELIEVE PARTIES FROM LIABILITY AS PARTNERS. The mere execution of an agreement to incorporate, accompanied with conduct which to all outward appearances was equally consistent with the existence of a partnership, did not create a de facto corporation until the articles were filed with the county clerk, and the members were liable to a third party without notice selling goods to the firm.[1]

3. PARTNERSHIP—PARTNERSHIP PRESUMED TO CONTINUE UNTIL CONTRARY SHOWN. Partnership, once shown to exist, is presumed to continue until the contrary is shown.

4. PARTNERSHIP—MEMBERS LIABLE AS PARTNERS AFTER INCORPORATION TO PERSON WITHOUT NOTICE. Where a partnership is incorporated, a party who has dealt with the partnership and supposes that he is still dealing with it, may hold the partners liable for goods furnished the corporation, the duty resting on the partners to give notice of the incorporation.

Appeal from District Court, Third District, Salt Lake County; *Jno. F. Tobin*, Judge.

Action by the Ogden Packing & Provision Company against W. C. Wyatt and others. Judgment for plaintiff, and defendants appeal.

AFFIRMED.

*C. H. Hart*, of Salt Lake City, for appellants.

*H. A. Smith & Son*, of Salt Lake City, for respondent.

THURMAN, J.

---

[1] *Marsh* v. *Mathias*, 19 Utah, 350, 56 Pac. 1074; *Kilpatrick-Koch Dry Goods Co.* v. *Box*, 13 Utah, 494, 45 Pac. 629; *Jackson* v. *Crown Point Min. Co.*, 21 Utah, 1, 59 Pac. 238, 81 Am. St. Rep. 651; *Mitchell* v. *Jensen*, 29 Utah, 346, 81 Pac. 165; *Bentley* v. *Bossard*, 33 Utah, 407, 94 Pac. 736.

Plaintiffs procured judgment against defendants, as partners, in the district court of Salt Lake county for a balance of an account for goods, wares, and merchandise delivered to defendants at their special instance and request.

Defendants denied that they were partners during the period when the indebtedness was incurred, and affirmatively alleged that during said time they were a corporation, and that plaintiff had knowledge of the fact and dealt with them upon that understanding. This appears to be the only substantial issue involved in this appeal.

The evidence introduced by plaintiff tended to show that defendants' place of business was on Regent and Second South streets, Salt Lake City, Utah, at which place defendants carried on the business of selling meat and other provisions; that on or about November 20, 1918, prior to any business dealings between plaintiff and defendants, plaintiff made an investigation to determine the capacity in which defendants were carrying on said business, and ascertained that defendants were partners, but contemplated organizing as a corporation at some time in the future; that after that defendants purchased an order of meat for Thanksgiving Day, 1918, for which they paid cash; that thereafter defendants continued to purchase goods from plaintiff, making payments therefor from time to time until about the 11th day of June, 1919; that at that time defendants owed plaintiff a balance of $1,463.98, to recover which this suit was commenced and judgment obtained. The evidence of plaintiff's witnesses is also to the effect that plaintiff was never notified or had any knowledge that defendants had organized, or attempted to organize, a corporation, but that plaintiff proceeded all the time upon the understanding that defendants were partners and individually liable to pay for the goods furnished them by plaintiff.

Practically all of these propositions upon which plaintiff relies are categorically denied by defendants. The evidence introduced by them tends to show that defendants commenced negotiations among themselves as early as October, 1918, with a view to forming a corporation to carry on the

business referred to, and accordingly drew up articles of incorporation, for that purpose; that they first fixed the capital stock at $2,500, but, afterwards increased it to $5,000; that the articles were signed by each defendant who subscribed for a substantial number of shares of the capital stock; that defendants then commenced the sale of meat and other provisions; that their first business with plaintiff was on or about Thanksgiving Day, 1918, as stated by plaintiff's witnesses; that on December 2, 1918, they filed the aforesaid articles of incorporation and oaths required in the office of the county clerk of Salt Lake county, and paid the fee therefor; that a certified copy of the articles thus filed was transmitted to the Secretary of State, but no filing fee was remitted at that time, and consequently no certificate of incorporation was issued; that about the month of March, 1919, defendant H. C. Lund, who was attending to the business of incorporating defendants, was notified by the Secretary of State that the certified copy of the articles of agreement was in his office awaiting the payment of filing fees, whereupon Mr. Lund went to the secretary's office and paid the amount required; that still no certificate of incorporation was issued by the Secretary of State, and upon inquiry it was ascertained that the articles had been returned to the county clerk from whom they were originally received; that the fee previously paid by Mr. Lund for filing the articles was returned to him, and thereafter paid to the Secretary of State. It appears that the certificate of incorporation was issued by that officer June 2, 1919. In the meantime, as heretofore stated, plaintiff and defendants had been doing business together, and the indebtedness had been incurred for which the action was brought.

It thus appears, according to the evidence submitted to the jury, that the plaintiff had the understanding all the time that it was doing business with a partnership in which each partner was responsible for any indebtedness incurred, while, on the other hand, defendants had the understanding that they were doing business as a corporation in which each shareholder was responsible only to the extent of his subscription to the capital stock.

The issues of fact were submitted to the jury under instructions given by the court. The jury resolved all questions submitted to it in favor of the plaintiff, and rendered a verdict for the full amount prayed for in the complaint.

While many errors are assigned relating to the exclusion and rejection of evidence, the writer is of the opinion that they are either entirely without merit, or, under the circumstances, were nonprejudicial. There were, however, exceptions taken to certain instructions given to the jury that require something more than a passing notice.

Before considering the instructions, lest it should be assumed that we have overlooked an important matter, we shall advert to one feature of the evidence as to which both plaintiff, and defendants spent considerable time and apparently manifested considerable anxiety. Plaintiff contended that defendants did business under the name and style of ''Regent Street Market,'' while defendants contended that the business was done under the name and style of ''Regent Street Market Company.'' The mind of the writer was puzzled from the beginning to the end of his investigation of the matters contained in the record to determine just what significance there was, or is, in respect to this matter upon which the parties spent so much valuable time. Whether defendants did business as ''Regent Street Market'' or as ''Regent Street Market Company,'' as I view the case, had no tendency whatever to determine the vital question as to whether defendants did business as a partnership or as a corporation. Either as a partnership or as a corporation they had the undoubted right to adopt any name they chose, and the adoption of either of the names suggested would have no tendency whatever to settle the matter in dispute. So much for that.

Now as to the instructions to which defendants excepted and upon which they rely for a reversal of the judgment. Both plaintiff and defendants agree that instruction No. 12 as given by the court in all probability had controlling influence upon the minds of the jury in arriving at their verdict. The

defendants excepted to the instruction as a whole. We quote the same at length.

"You are instructed that under the evidence in this case there was no de facto corporation organized by the defendants or any of them, in any event until it filed articles of incorporation with the county clerk of Salt Lake county."

The contention of respondents is that defendants were not even a de facto corporation until they filed their articles of incorporation with the county clerk December 2, 1918, and that prior to that date whatever business they did with plaintiff was in any view of the case done as partners, and not otherwise; that, having commenced as partners in their dealings with the plaintiff, and having established a credit with plaintiff as such, that relationship was presumed to continue indefinitely, even though defendants in the meantime had organized as a corporation, unless it appeared that plaintiff had knowledge of the change. On the other hand, defendants contend that from the time they signed their articles of agreement and commenced to transact business thereunder, which was shortly before they commenced to do business with the plaintiff, they were a de facto corporation, and, as against all persons except the state of Utah, they had the right to exercise the powers of a corporation de jure the same as if they had received the certificate of incorporation from the Secretary of State. These, as we understand it, are the contentions of the respective parties from which it will be seen the instruction complained of probably had a decisive influence in determining the conclusion to be reached by the jury. The full effect of this instruction, however, cannot be accurately estimated without reading in connection therewith instruction No. 21, to which objection was also made. That instruction reads as follows:

"If you find from a preponderance of the evidence that the defendants, or any of them, at or previous to the time that the business of the meat market located at No. 41 East Second South Street was commenced, joined together to carry on the business of conducting the meat market in question for their common or community interest in the profits, and if you further find that said market was conducted and carried on pursuant to such arrangement up to December 2, 1918, then I charge you that all of the defendants who

made such arrangement and engaged in such business pursuant to such arrangement became and were partners in said business during said time, and if you find that the defendants, or any of them, were partners, as hereinbefore defined, with respect to said business during said time, then the court charges you that such relation of partnership is presumed to continue until the contrary is shown."

This brings us to a consideration of the law upon which the parties rely in support of their respective contentions.

In support of their contention that defendants were a corporation de facto from the time they signed the articles of incorporation and commenced business thereunder, defendants rely upon the following authorities: *Marsh et al.* v. *Mathias et al.*, 19 Utah, 350, 56 Pac. 1074; *Kilpatrick-Koch Dry Goods Co.* v. *Box*, 13 Utah, 494, 45 Pac. 629; *Utah L. & Tr. Co.* v. *United States*, 230 Fed. 343, 144 C. C. A. 485; *Jackson* v. *Crown Point Min. Co.*, 21 Utah, 1, 59 Pac. 238, 81 Am. St. Rep. 651; *Western Inv. Co.* v. *Davis*, 7 Ind. T. 152, 104 S. W. 573, 15 Ann. Cas. 1134; 1 Thompson, Corps. 224, 225; *Mitchell* v. *Jensen*, 29 Utah, 346, 81 Pac. 165; *Bank of Midland* v. *Harris*, 114 Ark. 344, 170 S. W. 67, Ann. Cas. 1916B, 1255; *Mokelumne Hill Canal & Min. Co.* v. *Woodbury*, 14 Cal. 424, 73 Am. Dec. 658; *Owensboro Wagon Co.* v. *Bliss et al.*, 132 Ala. 253, 31 South. 81, 90 Am. St. Rep. 907; *Walton, etc.*, v. *Riley, etc.*, 85 Ky. 413, 3 S. W. 605; *Portland & Greenwood Turnpike Co.* v. *Bobbs*, 88 Ky. 226, 10 S. W. 794; *Rainwater* v. *Childress*, 121 Ark. 541, 182 S. W. 280; 1 Fletcher, Ency. Corps. § 278.

An examination of these cases demonstrates that very few, if any, of them throw any light upon the question presented here. Take, for instance, the Utah cases cited by appellant. In *Marsh et al.* v. *Mathias et al.*, supra, the first paragraph of the syllabus clearly distinguishes the cases:

"Where, in an attempt to form a corporation, certain parties enter into an agreement, in which is set forth the name and object of the corporation and the time of its duration, the amount of capital stock and the par value of each share, that private property of stockholders shall not be liable for debts of the corporation, the place of its general business, and which provides for the election, qualification, and removal of officers, and the making and amending of by-laws; and the agreement is accompanied by an affidavit of four of the signers that each party has paid, or is able to and will

pay the amount of his stock, and that it is bona fide their intention to commence and carry on the business mentioned; that the agreement was filed with the county clerk; and that the concern commenced operations immediately and ever since has carried on the business mentioned in the agreement, the concern is a de facto corporation although section 2267 et seq. C. L. U. 1888, were not fully complied with."

In *Kilpatrick-Koch Dry Goods Co.* v. *Box*, supra, where the corporate existence of plaintiff was denied, it was said:

"This denial imposed upon the plaintiff the burden of proving its corporate existence. But it was only necessary to prove a corporation de facto. If there was a law, general or special, authorizing such a corporation, a *colorable organization*, with proof that it acted as such, would be sufficient." (Italics ours.)

There was no explanation of what was meant by "colorable organization." By colorable organization it would seem to the court there should be something more than an agreement signed, the terms of which are unknown except to the parties executing it, especially when there is nothing in the outward conduct of the signers in carrying on the business to differentiate the organization from that of a partnership.

In *Jackson* v. *Crown Point Min. Co.*, supra, the defendant had been duly incorporated, and for a considerable length of time had exercised the powers of a corporation de jure. At a regularly called meeting of its stockholders a resolution was adopted amending its articles by increasing the number of directors. The amendment was not filed, and for that reason the plaintiff in the case challenged the validity of an assessment made by the directors and procured an injunction against the sale of his stock. This court in passing upon the question held that the provisions of the statute requiring the filing of the original articles was mandatory, but that the failure to file an amendment, which was not fundamental would not invalidate the acts of the directors acting within the scope of their authority.

In *Mitchell* v. *Jensen*, supra, the plaintiff sued defendants, as copartners, for goods sold and delivered. Defendants denied the indebtedness, and affirmatively alleged that the goods were sold to a corporation, and that plaintiff dealt with the

company, as such, with full knowledge of its corporate existence. Judgment was entered for plaintiff. Thus far the case seems to be almost identical with the case at bar. The judgment in that case, however, was reversed: (1) Because the evidence failed to connect defendants with the transaction; and (2) because the findings of the trial court were fatally defective. We fail to discover anything in that case that can possibly aid the court in determining the question presented here.

In *Bank of Midland* v. *Harris*, supra, it was held that strict compliance with a statutory provision providing for incorporation by filing articles with the county clerk and Secretary of State was necessary to create a corporation de jure, but that filing with the county clerk and recording by him, together with the election of directors and other officers and the carrying on of business in furtherance of the articles, were sufficient to constitute a corporation de facto.

In *Mokelumne Hill Canal & Min. Co.* v. *Woodbury*, supra, it was held that substantial compliance with the statute requiring certain acts to be done to create a corporation is necessary, and that the omission of such acts as are declared necessary steps in the process of incorporation will be fatal, even collaterally, when the fact of incorporation can be questioned. We suggest, without deciding, that this case perhaps goes further against appellants' contention than this court is willing to go.

In *Walton, etc.*, v. *Riley, etc.*, 85 Ky. 413, 3 S. W. 605, the first paragraph of the syllabus reads:

"Corporations created under chapter 56, General Statutes, may commence business as soon as the articles are filed for record in the office of the county court clerk, and the franchise cannot thereafter be declared null and forfeited except in a regular proceeding instituted for that purpose."

This seems to be an express provision of the statute and consequently is not helpful in determining the question before the court. To the same effect is *Portland & Greenwood Turnpike Co.* v. *Bobbs*, cited by appellants.

Thompson on Corporations, also relied on by appellants,

treats the subject at considerable length. The discussion is altogether too voluminous to justify the court in attempting to reflect the author's views in this opinion. There is, however, at page 254 of the volume referred to, a statement in the nature of a summing up in relation to corporations de facto which seems to the writer to be of the very essence of reason and common sense. The author says:

"A corporation de facto must be established either by proof of the existence of a charter or some law under which a corporation with the powers assumed might be lawfully created, together with the user by the alleged corporation of the rights claimed to be conferred by such charter or law. Generally it is sufficient to show a general law or special charter, some evidence of an attempted organization, and a performance of acts which are distinctly corporate acts, and not such as could be done or performed by a partnership or individual."

Many cases in support of the text are cited in the footnote.

In *Owensboro* v. *Bliss,* supra, it appears that articles of agreement were executed and filed, as provided by the statute, in the office of the probate judge of the county, but the articles were never recorded. It is undisputed that under such organization the company entered upon the transaction of business as a corporation. It was understood in the community to be a corporation, and as such instituted and maintained actions at law. The Alabama court held it to be a corporation de facto.

In *Rainwater* v. *Childress,* supra, as to what constitutes a corporation de facto the court said:

"To constitute a corporation de facto, there need not be a strict or substantial compliance with the statute, but there must be a colorable compliance with the statute—that is to say, there must be color of legal organization under the statutes and user of the supposed corporate franchise in good faith. Courts differ among themselves as to how much must be done in order to constitute a corporation de facto. But all of the courts agree that some of the statutory steps must be taken in an honest attempt to comply with the requirements of the law and exercise by the associates of the corporate powers."

Defendants also rely on the doctrine announced in 1 Fletcher, Cyc. Corps. § 378, from which they quote the following excerpt:

"The rule laid down by a majority of decisions seems to be that the essential requisites of a de facto corporation are:

"First, the existence of a charter or law under which a corporation with the powers assumed might lawfully exist; second, an effort in good faith to incorporate thereunder; and third, an actual user or exercise of corporate powers; and that there is such a corporation when the existence of these requisites is shown, notwithstanding irregularities or defects in the organization, or a failure to comply in all respects with the provisions of the charter or statute."

Cases from more than half the states in the Union, as well as decisions from the Supreme Court of the United States, are cited in the note. We have found it impracticable to examine any considerable number of them, but, as far as we have investigated, we find no case in which there was not some attempt made with respect to filing in accordance with the requirements of the statute. In some instances the compliance with statutory requirements was almost as meager as in the instant case, but usually in such instances the organization, for some reason or other was estopped from denying its corporate existence. However, Mr. Fletcher, the author last cited, in the same volume (section 298, at page 608) says:

"The authorities seem to be agreed that there is not even a de facto corporation where no articles or certificate of incorporation have ever been filed or recorded as required by law, or, in other words, where there has been no attempt whatever to comply with the provisions of the statute in this regard, but there may be such a corporation if there has been an attempt in good faith to comply with such provisions, though all of the statutory requirements have not been strictly observed."

In support of its contention that the court did not err in giving instruction No. 12, respondent's counsel call our attention to numerous authorities, among which are the following: 14 C. J. 222; *Harrill* v. *Davis,* 168 Fed. 187, 94 C. C. A. 47, 22 L. R. A. (N. S.) 1153; *McLennan* v. *Hopkins,* 2 Kan. App. 260, 41 Pac. 1061; *Bigelow* v. *Gregory,* 73 Ill. 202; *Stevens* v. *Episcopal Church,* 140 App. Div. 570, 125 N. Y. Supp. 579. These authorities will be briefly considered in the above order.

In 14 C. J., above cited, after stating that certain attempts

to organize a corporation constitute a corporation de facto notwithstanding irregularities mentioned, the author says:

"On the other hand, it has been held that there is no corporation de facto where there has been no attempt at all, even colorable, to comply with a requirement of the statute made a condition precedent to corporate existence and the exercise of corporate powers, as in the case of a failure to execute, file, or record any articles or certificate at all, as required by the statute, or in some jurisdictions, perhaps, in case of failure to file the certificate with the Secretary of State, where this is expressly made a condition precedent by the statute, although such certificate is filed in the county clerk's office."

In *Harrill* v. *Davis*, a case somewhat similar in its facts to the case at bar, the court held that the defendants did not take on the color or appearance of a corporation until they filed their articles of incorporation with the proper officer.

In *McLennan* v. *Hopkins*, the second and third paragraphs of the syllabus reflect the views of the court.

"An entire failure to execute or file articles of incorporation, as required by the statute before persons can associate and do business as a corporation, precludes any claim to a de facto corporate existence.

"Where certain persons subscribe for stock, and organize for the transaction of a banking business by the election of a board of directors, a president, and cashier, intending to incorporate as a bank under the general laws of this state, and thereafter pay in a part of the capital subscribed, and a regular banking business is conducted by such persons, through their officers, in the belief that they are incorporated, but there has been, in fact, no such compliance with the law concerning corporations as to make such organization even a de facto corporation, those interested in the bank as organizers and owners of its capital and business are liable as partners for the debts contracted by the officers of such bank in the due course of its business."

In *Bigelow* v. *Gregory*, the court, at page 200 of the report, says:

"We are of opinion that in this case, as the question here comes up, the right of the defendants to be considerd a corporation, depends upon their having complied with the requirements of the statute, at least to the extent of the publication of their articles of association, and the filing of the certificate. These are important acts as affects the public interest, as affording means of notice respecting the corporation to such as deal with it, so that they may regulate their action and give or withhold credit accordingly, and

we think they are to be regarded as statutory prerequisites, essential to corporate existence."

See, also, *Guckert* v. *Hacke,* 159 Pa. 303, 28 Atl. 249, in which it was held that the members of a corporation who had complied with all the details required by the statute relating to incorporations, except that the certificate had not been recorded in the office of the county recorder in which was the principal place of business were liable as partners to a creditor who contracted with them without knowledge of the incorporation. To the same effect is *New York National Ex. Bank* v. *Crowell,* 177 Pa. 313, 25 Atl. 613.

In *Harrill* v. *Davis,* heretofore cited, the court, Sanborn, Circuit Judge, at page 192 of 168 Fed., at page 52 of 94 C. C. A., at page 1158 of 22 L. R. A. (N. S.) says:

"Neither the hope, the belief, nor the statement by parties that they are incorporated, nor the signing of articles of incorporation which are not filed, where filing is a requisite to create the corporation, nor the user of the pretended franchise of such a nonexistent corporation, will constitute such a corporation de facto as will exempt those who actively and knowingly used its name to incur obligations from their individual liability to pay them. Color of legal organization as a corporation under some charter or law, and user of a supposed corporate franchise in good faith, are indispensable to such exemption."

From our investigation of the authorities called to our attention, and from others which we have examined, we are of opinion that as applied to this case the court did not err in its instruction No. 12 as given to the jury. We can conceive of cases in which the giving of such an instruction might have been error, for if it had appeared in the evidence that defendants had performed some other requirement of the statute calculated to give public notice of their incorporation, or attempt to incorporate, we are not prepared to say that filing the articles of agreement with the county clerk would have been a mandatory prerequisite to the existence of a de facto corporation. But in the instant case, there being no evidence whatever of an attempt to incorporate, save the mere execution of an agreement by the defendants, as among themselves accompanied with conduct which to all outward appearances was equally consistent

with the existence of a partnership, we feel compelled to hold that until the articles were filed with the county clerk, as against the plaintiff, there was no existence of a de facto corporation.

This brings us to a consideration of instruction No. 21, heretofore quoted, to which exception was also taken. This instruction left to the jury the question whether under the evidence the defendants were partners prior to the filing of the articles of agreement with the county clerk, December 2, 1918. The instruction also declared that such partnership, if found to exist, would be presumed to continue until the contrary was shown. The jury found that the defendants by their conduct became and were partners prior to the filing of the articles, and that plaintiff had no notice of defendants' attempted incorporation, and consequently presumed that the partnership continued.

The evidence is conclusive that the defendants joined together to carry on the business for their common interest in the profits and that the business was carried on pursuant to such arrangement. So that if such conduct constituted a partnership relation there was no error in the first part of the court's instruction. Upon this phase of the case respondent quotes the following excerpt from 20 R. C. L., p. 4844:

"It is generally held that where parties associate themselves together for the purpose of organizing a corporation and fail, they thereupon become partners to the extent of their interest. In order that liability as partners should result it is usually recognized that the circumstances must be such that there is neither a corporation de facto nor de jure. The mere intent to form a corporation at a future time is insufficient to procure for them any corporate protection. Although ordinarily the promoters of a corporation are not considered partners, where the organization of a corporation never had any appearance of validity, they may be held liable as partners. Therefore, when an attempt to organize a corporation fails by omission of some substantial step or proceeding required by statute, its members or stockholders are liable as partners, even to those who deal with them without knowledge of the incorporation. One of the most serious defects consists of the failure to file the articles of incorporation with the proper state officials; and the omission to do so normally results in the members of the concern being treated as partners."

In this connection respondent also cites and relies on 30 Cyc. p. 397; *Bentley* v. *Bossard*, 33 Utah, 407, 94 Pac. 736; *Booth* v. *Scott*, 276 Mo. 1, 205 S. W. 641; *Lyon* v. *Van Oel*, 183 Iowa, 114, 165 N. W. 376; Wrightington, Unincorporated Associations (published in 1916) page 26.

As to the question of liability or nonliability as partners upon failure to establish a corporation de facto there seems to be a sharp conflict among the authorities. There is an illuminating discussion of the question in L. R. A. 1916C, commencing at page 196. Both sides of the question are presented with apparently considerable care, and the note is replete with the citation of numerous adjudicated cases.

Appellants cite and quote at length from pages 206 and 207 of the volume referred to, and assume that the weight of authority is in favor of their contention. They also rely on *Mokelumne, etc.,* v. *Woodbury*, supra; *Humphreys* v. *Mooney*, 5 Colo. 295; *Hyde* v. *Doe*, Fed. Cas. No. 6,969, 4 Sawy. 135; *Doty* v. *Patterson*, 155 Ind. 60, 56 N. E. 668; *Grandby Min. & Smelt. Co.* v. *Richards*, 95 Mo. 106, 8 S. W. 246.

Without undertaking to set out in detail our views as to the merits of these cases it is sufficient for our purpose to say that we have given the question painstaking consideration, and have arrived at the conclusion that the weight of authority, as well as the better reason, is against the contention of appellants. We are therefore of the opinion under the facts of this case that there was no error in the first part of the court's instruction in which it stated that certain conduct on the part of defendants would constitute a partnership.

The only question remaining to be considered as far as instruction No. 21 is concerned is, was the instruction correct in the statement that the relation of partnership was presumed to have continued until the contrary was shown.

That conditions once shown to exist are presumed to continue until the contrary is shown is a rule of evidence quite generally recognized by the authorities, and one as to which there are few exceptions. The rule as applied    **3** to the concrete question before the court finds support

in many authorities cited by respondent: 1 Fletcher, Cyc. Corps. § 361, p. 767; *Overlock* v. *Hazzard,* 12 Ariz. 142, 100 Pac. 447; 1 Cook, Corps. (7th Ed.) § 243; *Thompson* v. *Harmon* (Tex. Civ. App.) 152 S. W. 1161; *Sibley* v. *Parsons,* 93 Mich. 538, 53 N. W. 786; *Grocery Co.* v. *Mercantile Co.,* 176 Ill. App. 507; *Wood* v. *Jeffries,* 117 Va. 193, 83 S. E. 1074.

The rule is well stated in Cook, Corps., supra:

"It is clear that, even though a partnership becomes incorporated, yet a party who has dealt with the partnership and supposes that he is still dealing with it may hold the partners liable for goods furnished after the incorporation."

We do not understand that this rule is controverted by appellants. It is therefore unnecessary to prolong the discussion.

Appellants complain that by instruction No. 26 the court imposed upon the defendants the burden of proving that they gave notice to plaintiff that they were doing business as a corporation, and not as a partnership. The instruction, it seems to us, is a necessary corollary to the rule heretofore announced that conditions once shown to exist are presumed to continue until the contrary is shown.

As stated in the beginning, many exceptions were taken and many errors assigned. Such as we believe have sufficient merit to justify detailed consideration we have considered at length in the course of this opinion.

We find no reversible error, in the record. The judgment of the trial court is affirmed.


CORFMAN, C. J., and WEBER and FRICK, JJ., concur.


GIDEON, J., being disqualified, did not participate in the disposition of this cause.