# National Bank of Kentucky et al. v. Fleischaker.
(Decided Oct. 7, 1932.)

HUMPHREY, CRAWFORD & MIDDLETON and GEORGE W. NORTON, Jr., for appellants.

JOSEPH SOLINGER for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Affirming.

On January 25, 1928, M. L. Aronson, the son-in-law

of appellee, Louis Fleischaker, wanted to borrow from the National Bank of Kentucky $1,200 to buy an automobile. He and Fleischaker together went to the bank. The bank agreed to lend the money. Aronson executed a note payable on demand for $1,200, and Fleischaker delivered to the bank, as collateral to secure the note, 20 shares of United States Steel Company stock belonging to him. Fleischaker did not sign the note. This was only signed by Aronson. But Fleischaker signed there a blank power of attorney to the bank, the printed part of which recited that he had assigned and transferred stock and authorized the bank to assign and transfer it, but none of the blanks in the paper were filled. The bank attached the power of attorney and the stock to the note and put them away. Aronson made certain payments on the note, leaving only $200 unpaid. On August 2, 1930, he executed to the bank a note for $11,550, and pledged for its payment 552 shares of American Turf Association stock. In this condition of things Fleischaker tendered to the bank the $200, the balance due on the note for which his 20 shares of stock were pledged, and demanded the delivery of his stock. The bank refused to deliver the stock, and he brought this action against the bank to recover it. The case came on for trial before the jury, and, at the conclusion of the evidence, which showed the above facts, the court peremptorily instructed the jury to find for Fleischaker, which was done, and the bank appeals.

The note contained, among other things, these provisions: "The undersigned has this day pledged with the said bank, the securities listed on the back of this note as collateral security for the payment hereof to said payee or the legal holder. This pledge is made to secure all sums of money for which the undersigned may now or hereafter be liable to the said bank." On the back of the note were written these words: "Collateral, 20 shares U. S. Steel, common, also pledged on other loan." The note was signed only by Aronson. It does not appear when the notation on the back of the note was made, but the proof was that it was in the same handwriting as the writing filling the blanks in the note. The contention of the bank is that it had the right to hold the collateral for the payment of the second note executed by Aronson. The contention of Fleischaker is that he deposited his stock only as collateral for the $1,200 note, and was entitled to its return

when that note was paid. The bank showed that the note was in the form used by all the banks in the city at that time and for many years before. It also showed that seven or eight years before Aronson had made a note to the bank which Fleischaker had secured with collateral, but this note had been paid, and they had had no other similar transaction with the bank. There was no showing that Fleischaker had any knowledge of the usual form of notes taken by the banks or any knowledge of the language of the note in question beyond the fact that it was a note for $1,200. Nothing was said about this when the loan was made. Aronson simply asked for a loan of $1,200, and Fleischaker agreed to put up the 20 shares of stock which he had in his hands as collateral security. Nothing was said about securing any other debt or the right of the bank to hold it for any debt afterwards created. The only paper that Fleischaker signed was the blank power of attorney, and what might have been the rights of the bank under this paper, if filled out in a reasonable time, is a question not before the court, because the blanks were never filled at any time, and the suit was brought in 1931.

It is undisputed in the evidence that the only thing mentioned at the time was the $1,200 loan. Fleischaker deposited his stock with the bank as collateral security for the $1,200 loan, and this was all that was in the mind of the parties when the transaction occurred. Nothing was said about anything further, and Fleischaker signed nothing but the power of attorney, and did nothing except deliver the stock. If he had also signed the note, a different question would be presented. In American National Bank v. J. S. Minor & Son, 142 Ky. 792, 135 S. W. 278, Minor & Son held some notes which they signed and delivered to Finck, and Finck took them to the bank and delivered them as security for a loan which he secured from the bank. The bank took the collateral without any notice of any defect in Finck's title, and it was held that Minor & Son could not recover the notes from the bank. But that is not this case. Fleischaker made his own contract with the bank, and signed nothing but the blank power of attorney, which was never filled out and so affected his rights in no way.

It is insisted for appellant that, as the stock was deposited as security for the note, and the latter provided that the stock might be held to secure any other

debt, the bank had a lien on the stock for any other debt created by Aronson. But this provision was only a recital in the note of what had been done. The obligation was to pay the $1,200. Appellee delivered his stock simply to secure the $1,200. The indorsement on the back of the note was reasonably made after its delivery. Nothing of this sort was said to him, and he knew nothing of it. The contract he there made with the bank must be construed according to what was the real intention of the parties putting appellee on notice that his stock was to stand as security for anything other than the payment of $1,200 and interest, and this is all he agreed to.

Judgment affirmed.

Whole court sitting.