## Federal Chemical Co. v. Paddock et al.

(Decided March 27, 1936.)

340

ROGERS & ROGERS for appellant.
JOHN L. VEST and VEST & VEST for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The Boone County Farm Bureau was incorporated February 7th, 1920. Its articles of incorporation set out the nature of the business proposed to be transacted, promoted and carried on to be a county-wide organization for the purpose of promoting the development of the most profitable and permanent systems of agriculture, providing a medium of exchange of farm products, the purchasing and selling in quantities for the benefit of the agricultural interests, and the doing of all things necessary to the business interests of the farmer. They contain these provisions:

> "The highest amount of indebtedness or liability which the corporation may at any time incur" is $10,000; "the private property of the members of the corporation will not be subject to the payment of the debts of the corporation," and "a board of directors of not less than five or more than fifteen members shall conduct the affairs and business of the corporation."

The articles did not provide for the issuance of stock of the corporation of any value. After the corporation acquired title to land and a building in which to conduct its business, it immediately began to, and continuously thereafter, until some time in 1931, engaged in buying and selling to its members and the general public "all kinds of hay, mill feed, seeds, fertilizers, coal, etc." It had no capital and engaged in business on borrowed money from its organization until December 16, 1931, when it made a general assignment of all of its property for the benefit of its creditors. Its annual business ran from $35,000 to $65,000, or a half to three-quarter million dollars from the time of its organization until its assignment for the benefit of creditors. The .bureau federated itself with the Kentucky State Farm Bureau and the National Farm Bureau of the United States. It collected $6 annual dues from its members; $2 of which was turned over to the State Farm Bureau; 50 cents to the National Farm Bureau; and the balance it retained. It put on numerous exhibitions under the supervision of these bureaus and the Extension Department of the University of Kentucky.

The Federal Chemical Company, a corporation, on the 26th day of January, 1931, the 2d day of February, 1931, and the 3d day of April, 1931, sold and delivered, at the customary market price, fertilizer to the Boone County Farm Bureau, amounting to $1,078.70, of which $83.25 was paid, leaving due $995.45. At the time it sold the fertilizer to the bureau, Ben Paddock, E. H. Surface, Sterling Rouse, J. Bert Rouse, and Ross Russ, were its directors, in charge of its affairs and business. In actual charge of its purchases and sales of merchandise was a general manager who was subject to the authority and direction of the board of directors. The Federal Chemical Company's contracts for the sale of the fertilizer were made by its salesman with its general manager. The bureau failed to pay for the fertilizer as it agreed to do. After it had made an assignment to Sidney Smith, assignee, for the benefit of its creditors, its insolvency developed. This action was brought to recover the balance of the Federal Chemical Company's account of the members of the board of directors in office and in charge of its affairs and business at the time it sold

and delivered the fertilizer to it. Its petition, in addition to alleging that the board of directors had negligently violated the provision of its articles of incorporation limiting the amount of its liabilities to $10,000, in that they had suffered and permitted the corporation to be and become indebted to the amount of $13,500 or $3,500 in excess of the highest amount of its debt limit, sets forth a sufficiency of the foregoing facts in the usual language necessary to constitute a cause of action against the members of the board of directors. It prays judgment against each of them for the $995.45, with interest from May 1, 1931, and costs.

Each of the defendants demurred to the petition, which was overruled. To this ruling we shall hereafter advert. The first paragraph of the directors' answer merely denied they "wrongfully, unlawfully, carelessly, negligently or in violation of the articles of incorporation, suffered and permitted the bureau to become indebted to other persons in excess of $10,000.00," or "that as a result of the alleged wrongful acts of the defendants," or any one or more of them, "jointly and severally are liable to the plaintiffs." This form of denial is insufficient to constitute a denial that the corporation was by them "suffered and permitted" to become indebted in excess of $10,000. The second paragraph alleged that the bureau "was a mutual organization of farmers and does not now have, and never has had, any capital stock," and that in 1922, it became indebted in the amount of $10,000, and that at all times since that date it had been continuously indebted in an amount in excess of $10,000, and that this successive indebtedness was fully known to the plaintiff, its agents, officers, servants, and employees at the time of the sale of the merchandise sued for.

The Federal Chemical Company demurred to the first paragraph of the answer and entered a motion to strike from the second so much thereof as stated the bureau "was a mutual organization of farmers with no capital stock." Thereafter, the directors amended their answer. Its first paragraph is in the same form of denial contained in the first paragraph of the original. The second contained a copy of the articles of incorporation of the bureau, and alleged:

"That by virtue of the foregoing articles of incorporation of the Boone County Farm Bureau, the corporation is, and at all times since its incorporation, been a corporation under section 879, Kentucky Statutes, and is, and has been, a corporation since no pecuniary profits were to be derived by any of its incorporators or members * * * and by virtue of section 883, Kentucky Statutes, the defendants, nor any of them, are liable for any part of the debt sued on herein."

The third reiterates substantially the allegations contained in the second paragraph of the original. The fourth restates the allegation that the bureau was indebted in excess of $10,000 at the time of, and before, the purchase of the fertilizer mentioned in the petition and which was known to the fertilizer company, its officers, agents, servants, and employees at the time of the sales of the fertilizer. It demurred to the second and third paraghaph of the amended answer, and entered a motion to strike therefrom so much of the second as pertained to sections 879 and 883, Kentucky Statutes.

The court overruled the demurrer to each paragraph of the original and amended answer and the motions to strike therefrom. The Federal Chemical Company reserved an exception.

The record does not show that either the original or amended answer was responded to. However, the court, the parties, and their counsel treated the same as controverted by trying the issues as if made by a proper pleading. It is our duty now so to consider the case.

The jury's verdict was in favor of the directors and assignee of the corporation.

The Federal Chemical Company is here insisting that its demurrer to each paragraph of the answer as amended should have been sustained. The directors and the assignee argue that its petition does not state facts sufficient to constitute a cause of action, in that it fails to allege that the Federal Chemical Company, at the time it sold and delivered the fertilizer to the bureau, had no knowledge or information that the corporation had exceeded the limitation of its right to incur an indebtedness in excess of $10,000.

We will first consider and dispose of the directors' and assignee's demurrer to the petition.

If, in fact, the Federal Chemical Company, or anyone acting for it, had knowledge or information that the Boone County Farm Bureau had exceeded its charter limit of indebtedness, this was a defense. The duty to allege and prove it was on the directors and the assignee. This precise question was presented and determined adversely to the directors and the assignee in the present case, in Nuckols v. Robinson-Pettett Co., 159 Ky. 214, 166 S. W. 972. See Phœnix Third National Bank v. Martin, 219 Ky. 579, 293 S. W. 1064.

The rule in such case is, where one is relying on a statute for the right of recovery, the burden is upon him to allege and prove that his cause of action does not come within any exception set forth in the statute. The statute (section 550, Ky. Stats.) under which the Federal Chemical Company seeks to recover of the directors does not contain any exception. Therefore, if the directors could show that the Federal Chemical Company or its salesman had knowledge or information that the bureau had exceeded its debt limit at the time the fertilizer was sold or delivered, such was a good defense, as it would thus appear that the fertilizer company was a party to the wrong and had itself been guilty of violating the statute under which it seeks a recovery.

It is distinctly alleged in the petition, and established by the evidence, that the Boone County Farm Bureau attempted to incorporate under the law of this commonwealth, and as a corporation actually engaged for more than ten years, on a large scale, in the business of retailing to the public generally, including its own members, farm seed, hay, grain, feed, and other products, selling the same to nonmembers at one price, and to its members, at a lesser. The profits of the business to its members were in the reduction of the corporation's sale price to them of the merchandise which they purchased of it. Its federation with the state and national farm bureaus and the Extension Department of the University of Kentucky, and occasionally putting on exhibitions in connection therewith, were no more than advertising schemes for the purpose of promoting the retail business of the cor-

poration. The paramount business in which it engaged was retailing farm seed, hay, grain, feed, and other products to the general public at the usual, customary, retail price except to its own members.

The directors are insisting that the corporation was a mutual organization, incorporated under the authority of the words "any other lawful purpose," as they are used in section 879; and by section 883 they are exempted from liability under section 550, which is a section of the general provisions of the Statutes governing private corporations. The phrase "any other lawful purpose" in section 879, following the words "religious, charitable and educational," must be construed to embrace only associations ejusdem generis.

"The rule of ejusdem generis is that where, in a statute, general words follow a designation of particular subjects or classes of persons, the meaning of the general words will ordinarily be presumed to be restricted by the particular designation, and to include only things or persons of the same kind, class or nature as those specifically enumerated, unless there is a clear manifestation of a contrary purpose."

24 R. C. L. 996. In construing statutes like unto that now under review, we have often applied this rule. See Black v. Commonwealth, 171 Ky. 280, 188 S. W. 362; Vansant v. Commonwealth, 189 Ky. 1, 224 S. W. 367; Brent v. Commonwealth, 194 Ky. 504, 240 S. W. 45; Phelps v. Commonwealth, 209 Ky. 318, 272 S. W. 743.

Aside from this view, chapter 14 of the Acts 1891-92-93, p. 16, of which sections 879 and 883 are a part, is entitled:

"An Act to provide for the organization of Eleemosynary and Educational Institutions."

It will be observed there is nothing in this title to indicate that the body of the act intends to contain, or contains, the authority or privilege to incorporate a private corporation such as the Boone County Farm Bureau. Nor is there anything in the title to indicate that the act intends to, or does, contain authority to organize farm bureaus. To construe the act as conferring the authority to organize such corporations

as a farm bureau of the type of the one here involved, would render the title within the inhibition of section 51 of the Constitution. When the act is so construed as embracing the authority to organize only eleemosynary and educational institutions, its provisions are in harmony with section 51 and our construction thereof. See Board of Penitentiary Com'rs v. Spencer, 159 Ky. 255, 166 S. W. 1017. To construe section 879 as contended for by directors, will bring it within the inhibition of section 51 of the Constitution. It is our duty so to construe it as to be constitutionally valid, if possible. Therefore, we cannot approve the directors' construction of it.

The Boone County Farm Bureau at the time it was organized was not, and is not now, that type and character of organization authorized to be organized under section 879. The business of retailing "all kinds of hay, mill feed, seeds, fertilizers, coal, etc.," in which the corporation engaged extensively for a perion of ten years is that character and type of business authorized to be engaged in by private corporations organized under section 539 et seq., of which section 550 is one. The latter reads:

"If the directors or officers of any corporation shall fail to comply with, or shall violate any of the provisions of, this article, those so failing, refusing or violating shall be jointly and severally individually liable for any loss or damage resulting to any person from such failure, refusal or violation, and, in addition thereto, the persons so liable shall be each punished by a fine of not less than one hundred nor more than one thousand dollars."

This section has often been construed by us to govern the liability of directors of a corporation who fail or refuse to comply with or violate any provision of the articles of which section 550 is a part, and if they fail, or refuse to comply therewith, or violate it, they are jointly, severally, and individually liable for any loss or damage resulting to any person for such failure, refusal, or violation. Randolph v. Ballard County Bank, 142 Ky. 145, 134 S. W. 165; Nuckels v. Robinson-Pettett Co., supra; Croninger v. Bethel Grove Camp Ground Ass'n, 156 Ky. 356, 161 S. W. 230; Phœnix Third National Bank v. Martin, supra.

Section 539, Kentucky Statutes, mandatorily imposed upon the incorporators of the bureau, as a corporation, to specify in the articles of incorporation the amount of its capital stock and the number of shares into which the same "shall be divided." The incorporators disregarded this provision, and failed to, and did not, state in the articles of incorporation the amount of its capital stock and the number of shares into which the same was to be divided. The board of directors, including those sued in this action, continuously ignored this requirement of section 539, as well as other sections of the same article, governing the organization and operation thereunder of corporations, though the bureau for more than ten years engaged in business as a corporation.

Therefore, during the period of its corporate existence, it was a de facto corporation under section 539 et seq. A de facto corporation exists (Taylor on Private Corporations, page 145) "when a body of men are acting as a corporation under color of apparent authority, in pursuance to some charter, or enabling act.

> " 'Color of apparent organization under some charter or enabling act' does not mean that there shall have been a full compliance with what the law requires to be done, nor a substantial compliance. A substantial compliance will make a corporation de jure. But there must be an apparent attempt to perfect an organization under the law. There being such apparent attempt to perfect an organization, the failure as to some substantial requirement will prevent the body being a corporation de jure; but, if there be user pursuant to such attempted organizaiton, it will not prevent it being a corporation de facto."

Finnegan v. Noerenberg, 52 Minn., 239, 53 N. W. 1150, 1151, 18 L. R. A. 778, 38 Am. St. Rep. 552; Hughes Co. v. Farmers' Union Products Co. et al., 110 Neb. 736, 194 N. W. 872, 37 A. L. R. 1314; 1 Cook on Stock & Stockholders & Corporation Law (3d Ed.) sec. 234; Marshall v. Keach, 227 Ill. 35, 81 N. E. 29, 118 Am. St. Rep. 247, 10 Ann. Cas. 164; First Title & Securities Co. v., United States Gypsum Co., 211 Iowa, 1019, 233 N. W. 137, 73 A. L. R. 1196.

The court, in People v. La Rue, 67 Cal. 526, 530, 8 P. 84, 87, and repeated in First Baptist Church v. Branham, 90 Cal. 22, 27 P. 60, said:

"A corporation de facto may legally do and perform every act and thing which the same entity could do or perform, were it a de jure corporation. As to all the world, except the paramount authority under which it acts and from which it receives its charter, it occupies the same position as though in all respects valid, and even as against the state, except in direct proceedings to arrest its usurpation of power, it is submitted, its acts are to be treated as efficacious."

The ignorance to any extent or degree of, or the failure to comply with, the requirements of section 539 et seq. on the part of the incorporators or the sued directors of the farm bureau or their predecessors in office may not now be invoked by the present directors to protect them from their individual liability imposed on them by section 550. The statutory obligation was on them to take notice of the statutes and the charter powers and limitations of the corporation whose affairs and business they as directors governed and controlled. Citizens' Bank v. Bank of Waddy, 126 Ky. 169, 103 S. W. 249, 31 Ky. Law Rep. 365, 11 L. R. A. (N. S.) 598, 128 Am. St. Rep. 282; Bell & Coggershall Co. v. Kentucky Glass-Works Co. 106 Ky. 7, 50 S. W. 2, 1092, 51 S. W. 180, 20 Ky. Law Rep. 1684, 21 Ky. Law Rep. 133, 156; American Southern National Bank v. Smith, 170 Ky. 512, 515, 186 S. W. 482, Ann. Cas. 1918 B, 959; Phœnix Third National Bank v. Martin, supra.

Since under the management of the bureau's directors the business was done in a corporate manner and under a corporate franchise, and, in the exercise of such right, the directors so engaging in business will not now be permitted to question or deny the existence of the corporation to escape their liability which would exist if the act done in the corporate name had been authorized by the pre-existence of a corporate capacity. Scheufler v. Grand Lodge A. O. U. W., 45 Minn. 256, 47 N. W. 799; Foster v. Moulton, 35 Minn. 458, 29 N. W. 155; Society v. Morris Canal & Banking Co., 1 N. J. Eq. 157, 21 Am. Dec. 41; Rush v. Halcy-

on Steamboat Co., 84 N. C. 702; Corey v. Morrill, 61 Vt. 598, 17 A. 840.

It should be apparent that it is our view that only those paragraphs of the answer which alleged that the Federal Chemical Company had information or knowledge that the corporation's indebtedness had exceeded $10,000 at the time its salesman sold and it delivered the fertilizer to the bureau, states facts sufficient to constitute a defense. A review of the evidence bearing on this issue convinces us it was insufficient to authorize its submission to the jury. The only evidence tending to establish that the Federal Chemical Company or its salesman, at the time of the sale or delivery of the fertilizer to the bureau had information or knowledge that the directors of the corporation had suffered and permitted it to exceed its debt limit, is the statement of the manager of the bureau to the effect that, at the time one of its orders for fertilizer was given by him, the salesman inquired of him if he thought the Federal Chemical Company would be paid if it shipped the goods, to which he responded that it had always gotten its money, except that bit of information imparted to the Federal Chemical Company by the reports of R. G. Dun & Co. R. G. Dun & Co.'s report of date April 16, 1931, was that October 16, 1929, the bureau's assets were $16,553.11; its liabilities, $9,000; net worth, $7,553.11. The report contains this statement:

"Authorities interviewed say that they have an investment in merchandise, fixtures, and equipment, estimated about $5,000.00. Reputed owners of real estate, worth about $8,000.00, also have some accounts receivable. Their indebtedness at this time is understood to be liberal, and in the absence of late figures, no definite opinion as to the company's net worth is obtained. This company was incorporated under the general laws of the State of Kentucky, in the summer of 1922, and commenced business at once."

A report mailed April 13, 1927, showed assets, $26,325.75; liabilities, $12,177.85; annual business, $35,000; annual expenses, $3,000. It was signed Boone County Farm Bureau, per J. G. Smith. Reports prior to these were annually made, and they show the bureau had

exceeded its debt limit at the date of those reports. It should be observed that the report of April 16, 1931, fixes the liabilities of the bureau, in 1929, at $9,000. An order of $527 for fertilizer was sold by the Federal Chemical Company to the bureau on February 2, 1931; another, January 26, 1931; and the third, April 3, 1931. The, account rendered, April 16, 1931, for these orders, was $1,078.11. It is dated the same day of R. G. Dun & Co.'s report showing its total liabilities were, in 1929, $9,000. It is apparent that so far as the evidence discloses, even if its debts were $9,000 on April 16, 1931, the three orders of fertilizer sold and delivered prior to this date, the last of which was April 3, 1931, the rational presumption would be that its debt was included in the aggregate. In determining whether the Federal Chemical Company or its salesman had knowledge at the time of the sale or delivery of the fertilizer to the bureau had exceeded its debt limit, the issue must be decided on the proven facts known to it or its salesman, at the time of the meeting of the minds of its salesman and the general manager of the bureau in making the contracts for the sales of the fertilizer. For a statement of the applicable and controlling principle in such case, see American National Bank v. Minor & Son, 142 Ky. 792, 135 S. W. 278; Traders' Securities Co., v. Oslin & Son, 227 Ky. 828, 14 S. W. (2d) 149; National Bank of Kentucky et al. v. Fleischaker, 245 Ky. 209, 53 S. W. (2d) 354; Worden v. Kennedy, 246 Ky. 716, 719, 56 S. W. (2d) 329; People's State Bank v. Jacksonian Hotel Co., 261 Ky. 166, 87 S. W. (2d) 111.

When this principle is applied to the facts, it can be safely said that the evidence entirely fails to establish information or knowledge on the part of the Federal Chemical Company and its salesman that the bureau's debt limit had been exceeded at the time of the sales and delivery of fertilizer. Admitting that in years previous to 1931, the reports of R. G. Dun & Co. disclose that the bureau had exceeded its debt limit during those years, such evidence is inadequate to bring knowledge to the Federal Chemical Company and its salesman, that in 1931 its indebtedness exceeded the limit of $10,000. The Federal Chemical Company was entitled to a peremptory instruction directing a verdict in its favor.

It is argued by the directors that they are not liable to the Federal Chemical Company for the loss of its debt, since they were not directors when the antecedent debts were created. Their liability does not arise solely from the fact the bureau was indebted before the Federal Chemical Company's sales of fertilizer to it. Their liability arises out of their suffering and permitting the general manager of the bureau to purchase the fertilizer when the corporation had already exceeded the debt limit, and the loss resulting therefrom.

The Federal Chemical Company insists that even though the Boone County Farm Bureau was not in law a corporation, the directors are liable as partners for suffering and permitting the business to be conducted in the name of, and as, a corporation.

Since it is our view the corporation was in reality at least a de facto corporation, and its directors, sued in this action, suffered and permitted the corporation to violate the debt limit as fixed in the articles of incorporation, they are, under section 550, liable to the Federal Chemical Company for the loss of its debt, it is unnecessary to consider the liability of the directors from the viewpoint of partners. A reader interested in the topic is referred to Cincinnati Cooperate Co. v. Bate, 96 Ky. 356, 26 S. W. 538, 16 Ky. Law Rep. 626, 49 Am. St. Rep. 300, and Ogden Packing & Provision Co. v. Wyatt, 59 Utah, 481, 204 P. 978, 22 A. L. R. 359.

Wherefore, the judgment is reversed for proceedings consistent herewith.