*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name:  04a0363p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

　　　　　　　　　　*Plaintiff-Appellee,*

　　*v.*

B & D VENDING, INC.; JAMES CLAY BOYD,

　　　　　　　　　　*Defendants-Appellants.*

No. 03-6008

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 02-00342—Karl S. Forester, Chief District Judge.

Argued:  July 29, 2004,

Decided and Filed:  October 25, 2004

Before:  MOORE and SUTTON, Circuit Judges; ADAMS, District Judge.[*]

---

## COUNSEL

**ARGUED:**  Frederick G. Irtz II, FREDERICK G. IRTZ II, ATTORNEY AT LAW, Lexington, Kentucky, for Appellants.  Robert J. Branman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Frederick G. Irtz II, FREDERICK G. IRTZ II, ATTORNEY AT LAW, Lexington, Kentucky, Patrick F. Nash, Lexington, Kentucky, for Appellants.  Robert J. Branman, Frank P. Cihlar, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

## OPINION

---

　　　　KAREN NELSON MOORE, Circuit Judge. Defendants-Appellants B & D Vending, Inc. ("B & D") and James Clay Boyd ("Boyd") appeal the district court's enforcement of an Internal Revenue Service ("IRS") administrative summons for B & D's corporate records during the period of November 1, 1998 through December 31, 1999.  On appeal, defendants argue that (1) the actions of a magistrate judge were invalid and void because of a delayed formal order of referral by the district court, and (2) the documents of a corporation that are generated after its administrative dissolution become personal documents, permitting Boyd to assert a Fifth Amendment privilege against their disclosure.  For the reasons set forth below, we **AFFIRM** the district court's judgment and remand for further proceedings consistent with this opinion.

---

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

# I. BACKGROUND

B & D, a business venture of Boyd and his wife, was incorporated under Kentucky state law on June 26, 1997. Boyd was designated president. The Secretary of State administratively dissolved B & D's corporate status on November 3, 1998, after the company failed to file an annual report as required by state law. *See* Ky. Rev. Stat. Ann. § 271B.14-210 (Banks-Baldwin 1998). Nevertheless, Boyd operated B & D as if it continued to exist as a corporation. B & D continued to file quarterly payroll tax returns under its corporate name. It similarly conducted advertising, banking, and record keeping using the B & D corporate identification.

As part of an IRS investigation of Boyd's federal individual income tax liability, Special Agent J. Trent Tyson ("Agent Tyson") issued an administrative summons pursuant to 26 U.S.C. § 7602 on November 5, 2001. The summons directed B & D to produce all corporate books, papers, records, and other data concerning its tax liability for tax years between 1996 and 1999, and was served on Boyd, his wife, and his attorney. On November 29, 2001, Boyd produced corporate records from March 26, 1997 through October 31, 1998 only. He refused to deliver records from (1) the first quarter of 1997, prior to B & D's incorporation, and (2) after October 31, 1998, pertaining to the period after the company had been administratively dissolved by the Secretary of State. Boyd argued that the records were personal records, and asserted various privileges under the Fifth Amendment, including an "act of production" privilege, contending that disclosure may incriminate him.

The United States filed a complaint against B & D and Boyd in the U.S. District Court for the Eastern District of Kentucky on July 17, 2002 to enforce the summons. On August 14, 2002, the magistrate judge appointed Agent Tyson to serve upon B & D and Boyd both the complaint and an Order to Show Cause issued by the magistrate judge directing B & D and Boyd to answer the complaint. The magistrate judge subsequently conducted a show-cause hearing on September 24, 2002. However, the district court did not issue a specific order formally referring the matter to the magistrate judge until December 3, 2002.

On February 26, 2003, the magistrate judge issued his initial report and recommendation as well as an order regarding certain documents. After both parties lodged objections, he entered a "Superseding Proposed Findings of Fact and Recommendation and Order" (hereinafter "final R & R") on June 13, 2003. The magistrate judge found that B & D "continued to hold itself out to the public as a corporation" and thus "continue[d] to exist as a corporation." Joint Appendix ("J.A.") at 86. Relying on *United States v. Theodore*, 479 F.2d 749 (4th Cir. 1973), he concluded that B & D was estopped from asserting that it no longer existed as a corporation; B & D was serving an intended business function and was engaged in business. Because B & D retained its corporate status, the magistrate judge determined that B & D was required to produce its corporate records and that Boyd, as a representative of B & D, had no standing to assert a Fifth Amendment claim as to B & D's corporate records. The magistrate judge, however, recommended against enforcement of the summons as to B & D's pre-incorporation records, concluding that they were personal rather than corporate and thus outside the scope of the IRS summons. In sum, the magistrate judge recommended that the district court enforce the summons as to B & D's post-corporate dissolution records only.

After de novo review of the portions of the magistrate judge's final R & R as to which objections were filed, the district court entered an order and opinion on July 2, 2003 adopting the magistrate judge's proposed findings of fact and recommendations and enforcing the summons with regards to B & D's post-dissolution records. The district court first rejected defendants' objections to the magistrate judge conducting the show-cause hearing prior to the district court's formal order of referral. The district court then found that, under applicable Kentucky law, B & D continued to exist as a corporate entity after administrative dissolution by the state. It rejected Boyd's argument that B & D's dissolved corporate status meant that the records of the corporation created post-dissolution were personal records qualifying for a Fifth Amendment privilege, noting that the issues of "post-dissolution tort and/or contract liability" and "the nature of post-dissolution documents as personal or corporate" were independent of each other. The district

court also accepted the magistrate judge's recommendation that the administrative summons did not apply to B & D's pre-incorporation records. Defendants filed a timely notice of appeal from the district court's judgment.

The district court had jurisdiction to enforce the IRS summons pursuant to 28 U.S.C. §§ 1340, 1345 and 26 U.S.C. §§ 7402(b), 7604(a). We have jurisdiction pursuant to 28 U.S.C. § 1291, providing for appellate review of a district court's final orders.

## II. ANALYSIS

On appeal defendants raise two primary issues. First they contend that the magistrate judge lacked the power to act in this case. Second, they argue that after the administrative dissolution of B & D, the corporation ceased to exist, and that all records created after dissolution relating to the business became personal records, which were not within the scope of the IRS summons and which were protected by Boyd's Fifth Amendment privilege against self-incrimination. We see no merit in these contentions.

### A. Magistrate Judge's Authority

The scope of a magistrate judge's statutory authority is a question of law, requiring us to undertake a de novo review. *See, e.g., Banks v. United States*, 614 F.2d 95, 96-98 (6th Cir. 1980).

Upon designation by the district court, a magistrate judge may conduct hearings and submit proposed findings of fact and recommendations for disposition of a variety of pretrial motions in civil and criminal cases. 28 U.S.C. § 636(b)(1)(B). Defendants challenge the authority of the magistrate judge to conduct the September 24, 2002 show-cause hearing, arguing that the district court had not properly referred the matter pursuant to § 636(b)(1)(B) prior to the hearing. Defendants also argue that because of this defect, the actions of the magistrate judge are invalid and void.

As a predicate matter, we note that defendants first raised their concern regarding the referral to the magistrate judge in a "Motion for Clarification of Referral" which they filed on October 7, 2002, shortly after the show-cause hearing was held by the magistrate judge. J.A. at 46. Noting that there was not a specific order of referral in the case at that time, defendants sought "clarification . . . as to the parameters of the referral of this case to" the magistrate judge. J.A. at 46. After the district court's formal order of December 3, 2002, referring the action to the magistrate judge "to conduct hearings and submit proposed findings of fact and recommendations on all dispositive motions, pursuant to 28 U.S.C. § 636(b)(1)(B)," the defendants did not object to the magistrate judge's actions until they filed their objections on June 23, 2003 to the magistrate judge's final R & R. The essence of the objection on this matter was that the defendants "question the ability of the Magistrate Judge to issue his [R & R] and hereby object to the entry of those documents on the ground that the events occurred without prior direction from the" district court. J. A. at 99 (Defs. Obj. to R & R).

The government argues that defendants waived their right to complain about the district court's referral procedure and about the pre-referral hearing held by the magistrate judge by their failure to object between the district court's formal referral and the magistrate judge's final R & R, a period of approximately six months' duration. Moreover, we note that the defendants neglected to raise this matter when they filed their objections to the initial R & R filed by the magistrate judge on February 26, 2003. The failure of defendants to raise promptly the issue of the magistrate judge's authority to hold the show-cause hearing, at a time when corrective action could be undertaken, if any might be warranted, is troubling. Also vexing is that the defendants waited until the final R & R, which was adverse to their primary contentions on the merits, to articulate this position. In light of the recent Supreme Court decision in *Roell v. Withrow*, 538 U.S. 580, 586 (2003), where the Court held that a party's consent for a magistrate judge to conduct a full civil proceeding and enter a final judgment pursuant to 28 U.S.C. § 636(c)(1) may be implied from its conduct, we are inclined to be sympathetic to the government's argument that defendants waived objections

(or impliedly consented) to the district court's formal referral order curing any arguable problems posed by the magistrate judge holding a pre-referral show-cause hearing.

We do not rest our decision of this matter on defendants' waiver or implied consent, for in any event we see no merit in the defendants' contentions. First, the district court's referral procedure comports with 28 U.S.C. § 636(b)(1)(B), which simply provides that the district court may "designate" a magistrate judge to conduct hearings and to submit a set of proposed findings of fact and recommendations for the district judge's consideration. The statute does not demand that a formal referral order be filed. *Cf.* 28 U.S.C. § 636(b)(1)(C) (directing magistrate judges to file their proposed findings and recommendations with the district court). Moreover, Local Rule 72.1 of the U.S. District Court for the Eastern District of Kentucky provides that "All magistrate judges may perform any of the duties authorized by 28 U.S.C. § 636(a), (b), and (c)." Although it would be preferable for a formal designation of a particular magistrate judge to be made prior to that magistrate judge conducting any hearings, we believe that the combination of the local court rule and the formal order of referral on December 3, 2002 were fully sufficient to authorize the magistrate judge to act in accordance with § 636(b) in this case.

Second, defendants have not pointed to any prejudice resulting from this method of referral. Defendants argue that the magistrate judge lacked the power to hold the show-cause hearing because the formal order of referral had not yet been issued. However, the referral order was issued by the district judge several months prior to the magistrate judge's initial proposed R & R and six months prior to the final R & R. Moreover, the district court conducted a de novo review of the portions of the final R & R as to which objections were filed by the parties. Under these circumstances, we cannot see any prejudice suffered by the defendants.

As noted by the Fifth Circuit, "when analyzing a challenge to the district judge's delegation of authority to a magistrate judge pursuant to § 636(b), the dispositive question is whether the duty assigned to a magistrate judge is subject to meaningful review by a district judge." *United States v. Bolivar-Munoz*, 313 F.3d 253, 256 (5th Cir. 2002) (quotations omitted). By conducting a de novo review of the portions of the magistrate judge's final R & R to which objections were filed, the district court subjected the magistrate judge's proposed factual findings and recommendation to meaningful review and complied with the requirements of § 636(b). That the show-cause hearing before the magistrate judge occurred before issuance of the formal referral order is of no consequence in the circumstances of this case. Defendants' contention that all of the acts of the magistrate judge are invalid and void is meritless.

## B.  Scope of Records Sought and Fifth Amendment Privilege

Defendants' primary argument on appeal is that when B & D was administratively dissolved, it ceased to exist as a corporation. They argue that from the time of administrative dissolution, the records of B & D became personal records of Boyd, and that Boyd was therefore entitled to assert his Fifth Amendment privilege against self-incrimination and to refuse to produce the records in response to the IRS's summons. Boyd's assertion of a Fifth Amendment privilege raises a mixed question of law and fact; hence, we examine the district court's factual determinations for clear error and its conclusions of law and applications of law to facts de novo. *United States v. Grable*, 98 F.3d 251, 253 (6th Cir. 1996).

The Fifth Amendment privilege "protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony." *Bellis v. United States*, 417 U.S. 85, 87 (1974). The protection extends to the business records of a sole proprietor or sole practitioner. *Id.* at 87-88. Nonetheless, an individual "cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a *representative capacity*, even if these records might incriminate him personally." *Id.* at 88 (emphasis added).

The definition of "representative capacity" reaches any organization whose records are held by a representative. *Id.* at 89. The rationale for barring Fifth Amendment claims in these circumstances is that

"individuals, when acting as representatives of a collective group, cannot be said to be exercising their personal rights and duties."[1] *Id*. at 90 (quoting *United States v. White*, 322 U.S. 694, 699 (1944)). As a result, the records must be those of "an organization which is recognized as an independent entity apart from its individual members." *Id*. at 92. This entity "must be relatively well organized and structured and not merely a loose, informal association of individuals. It must maintain a distinct set of organizational records, and recognize rights in its members of control and access to them. And the records subpoenaed must in fact be organizational records held in a representative capacity. In other words, it must be fair to say that the records demanded are the records of the organization rather than those of the individual." *Id.* at 92-93.[2]

Defendants focus on the nature of B & D's corporate existence under Kentucky law, arguing that B & D was completely stripped of its corporate status upon administrative dissolution and was only allowed to carry on business activities to the extent necessary to wind-up the business. *See* Ky. Rev. Stat. Ann. § 271B.14-050 (Banks-Baldwin 1998) ("A dissolved corporation shall continue its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs . . . ."); Ky. Rev. Stat. Ann. § 271B.14-210(3) ("A corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under KRS 271B.14-050 . . . ."). Defendants rely on two Kentucky cases in which the state court of appeals held individuals liable for actions after the dissolution of a corporation or acts exceeding a corporation's charter. *Steele v. Stanley*, 35 S.W.2d 867 (Ky. 1931); *Fed. Chem. Co. v. Paddock*, 94 S.W.2d 645 (Ky. 1936). Because under Kentucky law B & D could not engage in continued business operations apart from wind-up activities, defendants contend that B & D was lacking any corporate shelter or protections. Consequently, defendants conclude that all records created after the date of corporate dissolution became personal records to which Boyd's Fifth Amendment rights attach.

The district court properly rejected these arguments of defendants. We agree with the district court that the issue of post-dissolution liability of individuals for substantive violations is completely separate from the issues in this case concerning whether the records generated after dissolution are personal records or records of a business entity held by an individual in a representative capacity. Thus defendants' argument and the cases cited in support thereof are inapposite to the question at hand.

Under the relevant Supreme Court and Sixth Circuit precedents, the key question is whether the records are those of a "collective entity" which are held by an individual in a representative capacity. *In re Grand Jury Proceedings (Morganstern)*, 771 F.2d 143 (6th Cir. 1985 (en banc) (citing and analyzing *Bellis v. United States*, 417 U.S. 85 (1974); *Fisher v. United States*, 425 U.S. 391 (1976); and *United States v. Doe*, 465 U.S. 1237 (1984)). More specifically, the relevant questions are: (1) whether the entity whose records are being summoned is "relatively well organized and structured," (2) whether the records are the records of the organization, and (3) whether the records are held in a representative capacity. *Bellis*, 417 U.S. at 92-93.

The magistrate judge found that B & D continued to operate and to hold itself out to the public as a corporation after the administrative dissolution. Specifically the magistrate judge noted that "B & D continued to advertise, bank, file payroll tax returns, and keep records in the corporate name" after the dissolution. J.A. at 86. For an enumeration of record-keeping requirements of a Kentucky corporation, see Ky. Rev. Stat. Ann. § 271B.16 (Banks-Baldwin 1998). These findings were adopted by the district judge,

---

[1] The Court, in *Bellis v. United States*, 417 U.S. 85, 101 (1974), noted that this rationale might not apply to a "small family partnership" or a partnership where there was "some other pre-existing relationship of confidentiality among the partners." B & D does not fall inside this exception. The company maintained independent bank accounts and records, and had an established institutional identity. For an analysis of "small family partnerships" under *Bellis*, see *United States v. Wood*, 435 F. Supp. 870, 873 (W.D. Ky. 1977).

[2] An entity's corporate status is immaterial to this inquiry. *Bellis*, 417 U.S. at 101 ("[T]he applicability of the privilege should not turn on an insubstantial difference in the form of a business enterprise.").

and we see no clear error in these factual findings. Because after its administrative dissolution B & D functioned as a de facto corporation under Kentucky law, it operated in a "relatively well organized and structured" way to satisfy the requirements for a "collective entity." Indeed, even a partnership, which both Boyd and his attorney conceded was an apt characterization of the post-dissolution operation of B & D, would qualify as a "collective entity" for these purposes. *See, e.g.*, *Morganstern*, 771 F.2d at 144-48 (applying collective-entity rule to records of partnership held in a representative capacity). Hence, under these circumstances, we conclude that B & D continued to operate as a corporation or other collective entity after the administrative dissolution.

Defendants claim in their appellate brief that the IRS summons did not properly identify the records sought, because the summons identified "corporate records" whereas the records in the defendants' view were personal records. The IRS administrative summons sought the "corporate records and books of account relative to the financial transactions of" B & D. J.A. at 26. On its face, the summons appears simply to seek only records and documents that come within the scope permitted by *Bellis* and its progeny. Because defendants have presented no specific arguments as to any of the documents, but only have raised the general challenge (that these are personal rather than corporate records) which we reject, we conclude that we have no basis for doubting that the records sought are records of the organization.

Finally, defendants do not present argument on appeal regarding whether they possess the relevant records in a representational capacity. Again, for purposes of this appeal, we have no basis to conclude that any personal records are involved which would trigger Fifth Amendment privilege protection for Boyd.

## III.  CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's judgment. We remand for further proceedings consistent with this opinion.